J-S36009-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: T.W., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: T.W., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 386 MDA 2019 |

Appeal from the Decree Entered February 15, 2019
In the Court of Common Pleas of York County
Orphans' Court at No(s):  2018-0164,
CP-67-DP-0000328-2017

| | | |
|---|---|---|
| IN THE INTEREST OF: T.W., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: T.W., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 390 MDA 2019 |

Appeal from the Order Entered February 19, 2019
In the Court of Common Pleas of York County
Juvenile Division at No(s):  CP-67-DP-0000328-2017

BEFORE:   PANELLA, P.J., SHOGAN, J., and PELLEGRINI*, J.

MEMORANDUM BY PANELLA, P.J.:        **FILED: AUGUST 23, 2019**

T.W. ("Mother") appeals from the decree entered February 15, 2019,

that granted the petition of York County Office of Children Youth and Families

_____

* Retired Senior Judge assigned to the Superior Court.

("CYF"), and involuntarily terminated her parental rights to her son, T.W. ("Child") (born September 2017).[1]  Mother also appeals the order entered February 19, 2019 that denied Mother's petition to change Child's permanent placement goal from adoption to return to parent.  After careful review, we affirm.

Shortly after Child's birth, CYF obtained an order for emergency protective custody due to concerns regarding Mother's mental health and lack of housing.  **See** Order of Emergency Protective Custody, 9/27/17.  On November 21, 2017, Child was adjudicated dependent.  **See** Order of Adjudication and Disposition-Child Dependent, 11/21/17.  The court ordered Mother to obtain a psychological and psychiatric evaluation; sign releases necessary for the release of the results of any evaluation; maintain safe, stable and appropriate housing; attend counseling; cooperate with an in-home services team; and attend parenting courses.  **See id.**  Further, CYF implemented a family service plan ("FSP") that contained similar goals.  **See** CYF Exhibit 1; N.T., 2/15/19, at 7.  Thereafter, the court conducted periodic review hearings.

On August 14, 2018, the court changed Child's permanent placement goal to adoption.  **See** Permanency Review Order-Amended, 8/14/18, at 2. Mother's housing program had discharged her for not paying rent.  **See id.** at

_____

[1] The decree also involuntarily terminated the parental rights of Child's father, K.B. ("Father").  Father did not appeal the decree, and has not participated in this appeal.

1. Further, Mother was referred for an in-home services team on June 8, 2018, but the referral was closed on July 17, 2018 after Mother did not schedule appointments. *See id.* Mother had undergone a psychological evaluation and received a diagnosis of schizoaffective disorder. *See id.* The evaluation noted that Mother experiences a disconnect from reality and needed intensive mental health treatment. *See id.* The court found Mother was minimally compliant with the FSP. *See id.* Mother did not appeal from the goal change order.

On October 26, 2018, CYF filed a petition to involuntarily terminate Mother's parental rights to Child. On January 4, 2019, Mother filed a petition to change Child's permanent placement goal from adoption to reunification with Mother. On February 15, 2019, the orphans' court held an evidentiary hearing on the petitions.[2] At the hearing, CYF presented the testimony of Christina Faye, a CYF caseworker. Mother testified on her own behalf.

---

[2] At the hearing, Child, who was not yet two years old, had the benefit of both a guardian *ad litem* ("GAL"), as well as separate legal counsel. As such, we find the requirements of 23 Pa.C.S.A. § 2313(a) were satisfied. *See In re Adoption of L.B.M.*, 161 A.3d 172, 174-75, 180 (Pa. 2017) (plurality) (stating that, pursuant to 23 Pa.C.S.A. § 2313(a), a child who is the subject of a contested involuntary termination proceeding has a statutory right to counsel who discerns and advocates for the child's legal interests, defined as a child's preferred outcome); *see also In re T.S.*, 192 A.3d 1080, 1089-1090, 1092-93 (Pa. 2018) (finding the preferred outcome of a child who is too young or non-communicative unascertainable in holding a child's statutory right to counsel not waivable and reaffirming the ability of an attorney-GAL to serve a dual role and represent a child's non-conflicting best interests and legal interests).

On February 15, 2019, the orphans' court entered a decree involuntarily terminating Mother's parental rights to Child, and an on February 19, 2019 the court entered an order maintaining Child's permanent placement goal as adoption. Mother timely filed notices of appeal and concise statements of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b). This Court, acting *sua sponte*, consolidated Mother's appeals.

On appeal, Mother raises the following issues for our review:

1. Did the [c]ourt commit an abuse of discretion in using Mother's mental health disability as main factors in finding that her parental rights should be terminated?

2. Did the [c]ourt commit an abuse of discretion when it denied [Mother's] Petition to Change Court Ordered Goal from adoption to reunification because Mother would have alleviated the conditions that led to placement?

Mother's brief at 6.

We review these claims mindful of our well-settled standard of review:

The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. A decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. The trial court's decision, however, should not be reversed merely because the record would support a different result. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (citations and quotation marks omitted).

Termination of parental rights is governed by Section 2511 of the

Adoption Act, 23 Pa.C.S.A. § 2101-2938, which requires a bifurcated analysis:

> Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007) (citations omitted).

In this case, the orphans' court terminated Mother's parental rights

pursuant to 23 Pa.C.S.A. § 2511(a)(1), (2), (5), and (8), as well as (b). This

Court may affirm the orphans' court's decision regarding the termination of

parental rights with regard to any one subsection of Section 2511(a), as well

as Section 2511(b). *See In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004)

(*en banc*). Here, we will focus our analysis on Section 2511(a)(2) and (b),

which provides as follows:

> ### § 2511. Grounds for involuntary termination
>
> **(a) General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> * * *
>
> (2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and

> causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.
>
> * * *
>
> **(b) Other considerations.--**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child.  The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent.  With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(a)(2) and (b).

> Our Supreme Court has described Section 2511(a)(2) as follows:
>
> A decision to terminate parental rights, never to be made lightly or without a sense of compassion for the parent, can seldom be more difficult than when termination is based upon parental incapacity.  The legislature, however, in enacting the 1970 Adoption Act, concluded that a parent who is incapable of performing parental duties is just as parentally unfit as one who refuses to perform the duties.

*In re Adoption of S.P.*, 47 A.3d 817, 827 (Pa. 2012) (citations omitted).

To satisfy the requirements of Section 2511(a)(2), the moving party must produce clear and convincing evidence regarding the following elements: (1) repeated and continued incapacity, abuse, neglect or refusal; (2) the incapacity, abuse, neglect or refusal caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being; and (3) the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied.  *See In re Adoption of M.E.P.*, 825 A.2d 1266, 1272

(Pa. Super. 2003). Termination of parental rights under Section 2511(a)(2), is not limited to affirmative misconduct; to the contrary, acts of refusal as well as incapacity to perform parental duties can satisfy the requirements. *In re A.L.D.* 797 A.2d 326, 337 (Pa. Super. 2002).

This Court has long recognized that a parent is required to make diligent efforts towards the reasonably prompt assumption of full parental responsibilities. *Id.* at 340. A parent's vow to cooperate, after a long period of uncooperativeness regarding the necessity or availability of services, may properly be rejected as untimely or disingenuous. *Id.*

In her first issue, Mother asserts the orphans' court erred in considering her mental health status, as "[i]ndividuals with mental health issues will not [be] cured." *See* Mother's brief at 11-12. Mother contends that her mental illness should not be used as a reason to terminate her parental rights, arguing that her mental illness is manageable but not curable, and that she complied with her treatment plan. *See id.* at 12-13.

The orphans' court rejected Mother's interpretation of its ruling. Specifically, the court found that "Mother has established a long history of not seeking treatment for her mental health disability and not cooperating with any proposed treatment for her mental health disability." Orphans' Court Opinion, 4/1/19, at 12.

The court observed that Mother was diagnosed with unspecified schizoaffective disorder in late 2017. *See id*. Mother continued to deny any mental health issues while self-reporting that she did not take her prescribed

medications. *See id*. at 13. Further, three separate in-home services teams were closed unsuccessfully due to Mother's lack of cooperation. *See id*. The court acknowledged Mother's testimony that, since January of 2019, she was under the care of a psychiatrist and was compliant with her medication, but noted Mother's compliance did not occur until after the petition for involuntary termination was filed. *See id*. at 13-14. The court concluded that Mother was unwilling to address her mental health issues. *See id*. at 22. Accordingly, the court terminated Mother's parental rights pursuant to Section 2511(a)(2). *See id*. at 14.

Our review of the record supports the orphans' court's determination. CYF caseworker Faye testified that Mother's primary goals were to maintain stable housing, address Mother's mental health issues, and work with in-home service providers. *See* N.T., 2/15/19, at 7.

Mother lost her housing in September of 2018, and Mother did not provide CYF with a physical or mailing address. *See id*. at 11. Mother was offered services through Pressley Ridge, Catholic Charities, and JusticeWorks. *See id*. at 22. All closed unsuccessfully. *See id*. Moreover, Mother did not complete any parenting classes. *See id*. at 57-58. During visits, Mother engaged Child in conversations that were not age appropriate. *See id*. at 18. At the time of the termination hearing, CYF continued to have concerns regarding Mother's mental health, and Mother had not provided documentation showing her mental health issues were being addressed. *See id*. at 24. Faye categorized Mother's progress as minimal. *See id*. at 7.

Mother testified that she completed a psychiatric evaluation January 9, 2019, and that she had attempted to obtain one earlier. *See id*. at 69. She further testified that she was compliant with her current treatment program. *See id*. at 70. Mother observed, "it's a journey going through therapy because you have to find a really good therapist, you know what I mean, that you are comfortable with." *See id*. at 71. Mother asserted that her mental health was stable enough to take care of Child.[3] *See id*. at 81.

Despite Mother's testimony that her mental health was stable, the psychiatric evaluation and treatment notes that Mother submitted as exhibits largely confirmed CYF's concerns. Mother acknowledged she became homeless in December 2018 and was currently residing in a shelter. *See* Mother's Exhibit A, Psychiatric Evaluation, at 1. Mother confirmed she continued to experience auditory and visual hallucinations. *See id*. Mother identified her prescribed medication, but suggested she rarely took the medication as prescribed. *See id*. at 2. Moreover, Mother acknowledged she ran out of her medication over a month prior to the evaluation. *See id*.

The evaluation noted Mother had a long history of mental health services and was very inconsistent with both medication dosing and attendance. *See id*. at 3. A progress note authored by Lila Hughes, M.S.W., from January 15, 2019, observed that Mother was "not accepting of her past diagnosis of Schizoaffective disorder." *See* Mother's Exhibit A, Progress Note, at 1.

_____

[3] Mother has seven children, none of whom are in her care. *See* N.T., 2/15/19, at 58.

Further, Ms. Hughes questioned whether Mother continued to take her medications as prescribed as Mother's response was indecisive. ***See id***. at 2.

Although Mother argues that her mental health is an improper factor for the orphans' court to consider, our Supreme Court has previously rejected a similar argument, holding:

> [the] statutory basis for terminating involuntarily the rights of a parent with a mental or physical impairment is Section 311(2) of the Adoption Act of 1970, 23 Pa.C.S. § 2511(a)(2). The statute makes it clear that grounds for termination can consist of lack of capacity and not just affirmative misconduct. Judicial inquiry is to be centered on the best interest of the child, rather than the fault of the parent. . . . [W]e are satisfied that the same legal standard and burden of proof should be applied for the involuntary termination of parental rights of a parent with a mental and/or physical impairment as is applied to any other parent. We wish to emphasize, however, that the focus in such cases is the effect which an impairment has on the person's ability to provide parental care, not the mere fact of impairment or the fact that the impairment may make the parent less desirable than another parent. The purpose is to protect the welfare of the child. So long as the parent makes a sincere effort and takes advantage of the services offered to improve his condition and ability to fulfill parental obligations, and the child's essential physical and emotional needs are met, there should not be a termination of parental rights. The fact that a parent suffers from a physical or mental disability is not, and never was, the only relevant factor in determining whether his or her parental rights should be terminated, or whether there should be a different legal standard applied.
>
> What is important is the demonstrated willingness and ability of the parent to perform, at a minimal level, his or her parental duties. A parent's performance "must be measured in light of what would be expected of an individual in circumstances in which the parent under examination finds himself."

***In re Adoption of J.J.***, 515 A.2d 883, 893 (Pa. 1986) (footnote omitted).

- 10 -

Accordingly, contrary to Mother's argument, her mental health history was an appropriate factor for the orphans' court to consider. The orphans' court considered Mother's non-compliance with her mental health treatment, as well as her overall failure to comply with her FSP, and determined Mother is incapable of parenting Child and cannot or will not remedy her parental incapacity. The orphans' court did not abuse its discretion or commit an error of law in reaching this conclusion, and, accordingly, Mother's first issue does not merit relief.

We next consider whether the orphans' court abused its discretion by terminating Mother's parental rights pursuant to Section 2511(b). The requisite analysis is as follows.

> Section 2511(b) focuses on whether termination of parental rights would best serve the developmental, physical, and emotional needs and welfare of the child. As this Court has explained, Section 2511(b) does not explicitly require a bonding analysis and the term 'bond' is not defined in the Adoption Act. Case law, however, provides that analysis of the emotional bond, if any, between parent and child is a factor to be considered as part of our analysis. While a parent's emotional bond with his or her child is a major aspect of the subsection 2511(b) best-interest analysis, it is nonetheless only one of many factors to be considered by the court when determining what is in the best interest of the child.
>
>> [I]n addition to a bond examination, the trial court can equally emphasize the safety needs of the child, and should also consider the intangibles, such as the love, comfort, security, and stability the child might have with the foster parent. Additionally, this Court stated that the trial court should consider the importance of continuity of relationships and whether any existing parent-child bond can be severed without detrimental effects on the child.

- 11 -

*In re Adoption of C.D.R.*, 111 A.3d 1212, 1219 (Pa. Super. 2015) (quotation marks and citations omitted).

In addressing Section 2511(b), the orphans' court observed that Child was doing well in the home of his foster mother, who is a permanent resource for Child. Orphans' Court Opinion, 4/1/19, at 18-19. The court concluded there was a strong bond between Child and his foster mother, and little to no bond between Child and Mother. *See id.* at 19. The court also concluded that Mother was unable to provide a stable and safe environment for Child. *See id.* Accordingly, the court determined that terminating Mother's parental rights best met Child's needs and welfare. *See id.*

Mother argues the court erred in its consideration of Child's needs and welfare, contending that the court failed to conduct an independent examination of whether or not termination best serves the needs and welfare of Child. *See* Mother's brief at 14. Mother faults the court for concluding that she had little or no bond with Child and that Child's parental bond is with his foster mother. *See id.* Mother argues she did what was "within her power to create a bond." *See id.* at 15.

Our review of the record confirms that the orphans' court did not err in concluding that Child's needs and welfare are best met by terminating Mother's parental rights. Faye opined that there was not a strong bond between Mother and Child, noting that Child was removed from Mother's care shortly after his birth. *See* N.T., 2/15/19, at 18. Child is safe and happy in his foster home. *See id.* at 20-21. Faye further testified that Child is strongly

bonded to his foster mother, who is a pre-adoptive resource. *See id.* at 21, 26. Mother offered limited testimony regarding her relationship with Child, focusing primarily on the clothes and supplies she purchased for him and perceived deficiencies in the foster parents' care for Child. *See id.* at 74-75, 79-81.

The record amply supports the court's finding that it would best serve the needs and welfare of Child to terminate Mother's parental rights pursuant to Section 2511(b). Child has been out of Mother's care for nearly his entire life. Child is thriving in his foster home, and is strongly bonded to his foster mother, who is a pre-adoptive resource. Remaining in his foster home will allow Child to achieve permanence and stability. *See T.S.M.*, 71 A.3d at 269 (stressing the need to expedite the placement of dependent children "in permanent, safe, stable, and loving homes."). Accordingly, Mother's second issue fails.

In her final issue, Mother argues the orphans' court erred in denying her petition to change Child's permanent placement goal from adoption. The Juvenile Act governs proceedings to change a child's permanent placement goal. *See* 42 Pa.C.S.A. §§ 6301-6375. Orphans' courts must apply the following analysis:

> Pursuant to [42 Pa.C.S.A.] § 6351(f) of the Juvenile Act, when considering a petition for a goal change for a dependent child, the juvenile court is to consider, *inter alia:* (1) the continuing necessity for and appropriateness of the placement; (2) the extent of compliance with the family service plan; (3) the extent of progress made towards alleviating the circumstances which

necessitated the original placement; (4) the appropriateness and feasibility of the current placement goal for the children; (5) a likely date by which the goal for the child might be achieved; (6) the child's safety; and (7) whether the child has been in placement for at least fifteen of the last twenty-two months. The best interests of the child, and not the interests of the parent, must guide the trial court. As this Court has held, a child's life simply cannot be put on hold in the hope that the parent will summon the ability to handle the responsibilities of parenting.

*In re A.B.*, 19 A.3d 1084, 1088-89 (Pa. Super. 2011) (citations and quotation marks omitted).

The court denied Mother's petition to change Child's permanency goal from adoption to reunification with Mother because Mother failed to obtain stable housing and Mother's mental health issues were not stabilized. **See** Orphans' Court Opinion, 4/1/19, at 14. The court observed that Mother located housing with her family the week prior to the hearing and began attending therapy a "few short weeks before the date of the hearing." **See id.** at 15. The court concluded that Mother's past failure to maintain her mental health for any substantial length of time made the court unhopeful that Mother's progress would continue. **See id.** at 16.

Mother contends that her mental health issues should have afforded her additional time to demonstrate progress. Mother's brief at 15-17. She argues that she was engaging in treatment and had located housing. **See id.** at 15-16. Further, Mother contends that CYF mishandled her case by not assigning people who could effectively communicate with her. **See id.** at 16.

Upon our careful and thorough review of the record in this matter, we conclude that the orphans' court applied the appropriate legal principles to the

record, and that the record supports the court's findings. Further, it is apparent that, contrary to Mother's arguments, CYF provided appropriate efforts towards reunification, and Mother failed to take advantage of those services. The orphans' court did not commit an abuse of discretion in denying Mother's petition to change Child's permanent placement goal from adoption to reunification with Mother.

Accordingly, we affirm the decree involuntarily terminating Mother's parental rights, and the order denying Mother's petition to change Child's permanent placement goal from adoption to reunification.

Decree affirmed. Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/23/2019

- 15 -